Willy WHACK

v.

**PEABODY & WIND ENGINEERING CO.**

Civ. A. No. 77–1432.

United States District Court,
E. D. Pennsylvania.

June 27, 1978.

Dona S. Kahn, Philadelphia, Pa., for plaintiff.

Steven R. Waxman, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This race discrimination case, brought under Title VII of the Civil Rights Act of 1964, was tried before the Court, sitting without a jury, from May 4 to May 9, 1978. Closing arguments were heard on May 9, 1978. The parties filed with the Court proposed findings of fact and conclusions of law, and the case is now ready for decision.

## FINDINGS OF FACT.

The plaintiff in this action, Willy Whack, is a black male who was employed by the defendant, Peabody & Wind Engineering Company ("Peabody"), from October 1970 through January 1976 as a sheet metal worker. Peabody is a partnership engaged in the heating, ventilation and air-conditioning phase of the construction industry. The plaintiff was 31 years old and an experienced welder in 1970, when Local 19 of the Sheet Metal Workers International Association ("Local 19") issued him a permit and referred him for employment to Peabody. Plaintiff was initially assigned to work in the Peabody shop, under the supervision of John McFadden. He became a member of Local 19 in 1972.

The plaintiff had no significant problems, either racially motivated or otherwise, during the first three years of his employment at Peabody. He had an excellent attendance record, and he received no complaints about his work. During the period of time he worked at the shop, plaintiff was asked many times to administer welding tests to persons to certify them for site jobs. In the process of administering the test, he was asked to train the employees for taking such tests. It was the plaintiff's feeling during the time he worked in the shop that Mr. McFadden was fair to him. At no time during the period from 1970 through 1973 did he have any problems with Mr. McFadden because of his race.

In 1973, the plaintiff had a problem with Local 19 concerning the scheduling of his vacation. The matter was settled to the plaintiff's satisfaction, and he took his vacation as planned. Shortly after he returned from vacation, he was transferred from the shop to Peabody's nuclear power plant construction project in Salem, New Jersey. At the time of the transfer, work in the shop was declining, and many of the sheet metal workers employed in the shop had been laid off. At the same time, work at the Salem site was increasing, and experienced welders such as the plaintiff were needed. We find that the plaintiff was transferred to Salem because people with his skills were needed there rather than in the shop in 1973, and the plaintiff's race was not a factor in the decision to transfer him to Salem.

The plaintiff was the only black on the job site at Salem, and he experienced some harassment by other employees because of his race. On two occasions he complained about the harassment to Peabody's superintendent on the project, Edward Lampe.

In 1975, Peabody had in excess of sixty sheet metal workers assigned to the Salem project, including seventeen welders. As the project neared completion, the number of employees working on the project declined sharply. Finally, on January 9, 1976, Mr. Lampe laid off the plaintiff along with nine other individuals. Thereafter, only ten sheet metal workers were working on the Salem project, four of whom were welders and the remaining six performed other phases of sheet metal work.

At Peabody, the determination concerning whom to lay off is made by the superintendent on the particular project, who ranks the skills of each worker on the job in relation to the work that remains to be done. The employees who, in his opinion,

are the most skilled and productive for the work remaining are retained, while the workers less skilled and productive are laid off. This is the method Mr. Lampe used when he decided that the plaintiff would be among those laid off in January 1976. Mr. Lampe found that the plaintiff was less skilled and less productive than the sheet metal workers who remained at Salem in 1976, considering the work remaining to be done. We find that the plaintiff's race was not a factor in Mr. Lampe's decision to lay him off.

## DISCUSSION AND CONCLUSIONS OF LAW

This employment discrimination case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The plaintiff alleges that Peabody discriminated against him by reason of his race in connection with his transfer in 1973, and his layoff in 1976.[1]

In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973), the United States Supreme Court set out the order and allocation of proof in private, non-class action discrimination cases:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. . . . [If this is done, then] the burden must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. . . . [If this is done, then the plaintiff must] be afforded a fair opportunity to show that [the defendant's] stated reason for his rejection was in fact pretext.

■ In a transfer or lay-off suit, a plaintiff may establish a prima facie case under Title VII by showing: (1) that he is a member of a protected class; (2) that he was qualified for the job he was performing; (3) that he was satisfying the normal requirements of his job; and (4) that he was the object of adverse action, *e. g.*,

transfer or lay-off. *Rivers v. Westinghouse Electric Corporation*, 451 F.Supp. 44 at 47–48 (E.D.Pa.1978); see, *Wetzel v. Liberty Mutual Company*, 508 F.2d 239, 258–59 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *cf. McDonnell Douglas*, 411 U.S. at 802, n. 13, 93 S.Ct. 1817. A prima facie Title VII violation may also be established by showing that the defendant's policies or practices, although neutral on their face and in intent, nonetheless discriminate against a particular group. *Nashville Gas Company v. Satty*, 434 U.S. 136, at 141, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977); *Dothard v. Rawlinson*, 433 U.S. 321 at 329, 97 S.Ct. 2720 at 2726, 53 L.Ed.2d 786 (1977); *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 1861, 52 L.Ed.2d 396 (1977); *General Electric Company v. Gilbert*, 429 U.S. 125, 137, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); *Albermarle Paper Company v. Moody*, 422 U.S. 405, 422, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *McDonnell Douglas*, 411 U.S. at 802 n. 14, 93 S.Ct. 1817; *Griggs v. Duke Power Company*, 401 U.S. 422, 430, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Mammen v. Cedar Crest College*, No. 77–881 at 6 n. 2 (E.D.Pa. May 9, 1978); *Rivers*, 451 F.Supp. at 47–48.

■ In this case, it is clear that the plaintiff, a black man, is a member of a class protected by Title VII. Plaintiff also presented evidence designed to show that he was qualified for the job he was performing, that he satisfied the normal requirements of the job, and that he was transferred and then laid off by the defendant. The plaintiff also presented evidence to show that Peabody's policies with respect to lay-off, although neutral on their face, nonetheless had a discriminatory impact on Peabody's black employees. The plaintiff therefore carried his initial burden of establishing a prima facie case of race discrimination under both these theories.

Our Third Circuit in *Rodrigues v. Taylor*, 569 F.2d 1231, 1238–1239 (3d Cir. 1977),

---

1. The plaintiff also alleged that Peabody discriminated against him by reason of his race in connection with its failure to recall him after he was laid off in 1976. However, he presented no evidence as to the facts surrounding recall at Peabody, except that he was recalled in September, 1977 and laid off two weeks later.

recently commented as follows on the burden of the parties in a Title VII case.

In order to establish an employer's liability, Title VII plaintiffs, as an initial matter, need only present a prima facie case of employment discrimination. Plaintiffs satisfy their burden of production if they show that they are members of a protected class and that they were rejected for job vacancies for which they were qualified. Plaintiffs need not submit proof that a discriminatory motive underlay an employer's decisions. The burden of production then shifts to the defendant to adduce evidence of non-discriminatory motivation. *See, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–03, [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973); *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 399–400 (3d Cir. 1976); *Baxter v. Savannah Sugar Refining Corp.,* 495 F.2d 437, 443–45 (5th Cir.), *cert. denied,* 419 U.S. 1033, [95 S.Ct. 515, 42 L.Ed.2d 308] (1974). Absent such rebuttal evidence, courts presume unlawful discriminatory purpose. Moreover, if an employer produces evidence of a non-discriminatory reason for an employment decision, he may bear the burden of persuasion on that ultimate issue.[14] Thus,

[14] The majority of circuits have construed the *Green* case as shifting the burden of persuasion to the defendant employer once a plaintiff presents a prima facie case of employment discrimination. (citations omitted).

under Title VII the courts have developed a set of shifting evidentiary burden and presumptions that facilitates proof of employer's liability. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 357–62 & nn. 44–46, [97 S.Ct. 1843, 52 L.Ed.2d 396] (1977).

[4] On the basis of the evidence presented by the defendant in this case, the Court finds from a preponderance of the evidence that the defendant did not discriminate against the plaintiff on the basis of his race but, on the contrary, that it transferred him to Salem in 1973 because people with his skills were needed there rather than in the shop, and that it laid him off in 1976 because a reduction in the work force at Sa-

lem was necessary, and the plaintiff's skills and productivity were not as good as those who were retained, considering the work which remained to be done. The plaintiff was not treated differently than similarly situated white sheet metal workers employed by Peabody. The preponderance of the evidence convinced the Court that the decisions of Mr. McFadden and Mr. Lampe were based on their evaluations of the plaintiff's skills and productivity, and that race was not a factor in their decisions concerning the plaintiff.[2]

■ With respect to Peabody's use of a subjective procedure for making transfer and lay-off decisions, we note that although the use of subjective evaluations may open the door to more subtle types of discrimination, the use of subjective criteria is not a *per se* violation of Title VII. *Nath v. General Electric Company, Switchgear Division,* 438 F.Supp. 213, at 220–221 (E.D.Pa.1977); *see generally, United States v. Hazelwood School District,* 534 F.2d 805, 809–10, 812–13 (8th Cir. 1976), *vacated on other grounds,* 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (June 27, 1977); *Senter v. General Motors Corporation,* 532 F.2d 511, 528–30 (6th Cir. 1976); *Barnett v. W. T. Grant Company,* 518 F.2d 543, 549–50 (4th Cir. 1975); *Rowe v. General Motors Corporation,* 457 F.2d 348, 358–59 (5th Cir. 1972); *Dickerson v. United States Steel Corporation,* 439 F.Supp. 55, at 76–78 (E.D.Pa.1977). In this case, we find that the procedure used consisted of the subjective evaluation of clear, job-related criteria and that it was capable of being applied in a nondiscriminatory manner.

■ The statistical data and analysis presented by the plaintiff indicated that there was something in Peabody's lay-off process for its Blue Label workers that had a disparate impact on its black Blue Label workers. It was the plaintiff's testimony that no statistical analysis could be presented in connection with Local 19 members employed by Peabody because of the few black members of Local 19 who worked at

**2.** The plaintiff presented no rebuttal evidence.

Peabody. The statistical data on Blue Label workers was not persuasive as to the plaintiff, since he was a member of Local 19 and all of the Local 19 members at Peabody are skilled workers. The Blue Label workers at Peabody are mostly unskilled, hence the statistical data as to them was not persuasive to this Court in evaluating Peabody's lay-off procedures based upon skills and productivity. The Court therefore finds from a preponderance of the evidence that Peabody's lay-off procedures in connection with its Local 19 members did not have a disparate impact on black Local 19 members.

Peabody followed its usual procedure in transferring and laying off the plaintiff, and the plaintiffs' race was not a factor in either decision. He was transferred for the purpose of keeping him at work. The lay-off, coming as it did when the work force at Salem had been reduced from sixty to nineteen, was not a discriminatory lay-off. The plaintiff was kept working on the job until the point was reached where those on the job had better and more varied skills and higher productivity than the plaintiff. We find that the plaintiff's claim was not frivolous, unreasonable or groundless.

Accordingly, an order will be filed this date, entering judgment in favor of the defendant, Peabody & Wind Engineering Company, and against the plaintiff, Willy Whack. This memorandum is in lieu of findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.