**Joseph J. KELLER**

v.

**Lewis W. BLUEMLE, et al.**

**Civ. A. No. 81–2793.**

United States District Court,
E.D. Pennsylvania.

Sept. 13, 1983.

Joseph Keller, pro se.

James M. Penny, Jr., David R. Keller, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for Bluemle, et al.

## MEMORANDUM

GILES, District Judge.

Joseph Keller, a former employee of Thomas Jefferson University ("TJU") alleges that he was discharged in violation of the Age Discrimination in Employment Act of 1967 (ADEA) 29 U.S.C. § 621 *et seq.* (1976 & Supp. V 1981). Defendants now move for summary judgment asserting that plaintiff has failed to, and cannot, adduce evidence sufficient either to establish a *prima facie* case of age discrimination or to rebut defendants' proffered legitimate reasons for his dismissal. For the reasons which follow, defendants' motion will be granted.

## I. BACKGROUND

Keller, presently age 59, was a Training Supervisor in the Department of Custodial Services at the time of his dismissal on May 7, 1980. He had been appointed to that position in 1972 following four years as a

personnel assistant. It is agreed that Keller was doing a good job through 1978, as documented by a written appraisal prepared on May 24, 1978, by Keller's superior, Custodial Services Director George Curran. The appraisal rated Keller "outstanding" in three performance categories and "good" overall.

Critical to a determination of the age discrimination claim are the events during the seven week period beginning March 20, 1980. On that date, Curran met with Keller to announce changes he was making in the training program, including a deemphasis in the audio-visual component and a provision for employees' evaluation of the training provided by their foremen. According to plaintiff, Curran became upset during the meeting when Keller expressed opposition to some of the announced changes. A follow-up meeting was held March 27, 1980 during which Keller first requested Curran to provide him with a written description of his job duties as Training Supervisor. According to Keller, he requested the job description two or three times during the meeting but was told by Curran that he had all the information he needed. Plaintiff's repeated requests for the job description in the ensuing weeks became a major point of contention between Keller and Curran.

About two weeks later, on April 9, 1980, Keller sent a memorandum to Curran in which he reviewed the evolution of the training program from his perspective and stated that his superior did not have previous direct involvement in the training program because of other matters which Curran must have considered much more important. Keller also repeated his opposition to Curran's plan for employee evaluation of the training, cited prior memos dating from 1973 as to which he accused Curran of giving no response, and requested a copy of his 1972 job description. Curran met with Keller on or about April 11, 1980 to discuss the memorandum. According to plaintiff, Curran reacted angrily, asserting that the memorandum was a criticism of him which bordered on insubordination.

Thereafter, on April 15th, Curran sent Keller a letter expressing displeasure over the "unsolicited memorandum" which, in his opinion, contained "many inappropriate and inaccurate comments" and included some items beyond Keller's area of responsibility. The letter warned him to follow the new training procedures and to perform all job assignments even if he objected. Citing an admission by Keller that he was not working a full eight hour day, Curran also warned Keller that any further infraction would result in disciplinary action. Finally, Curran enclosed copies of Keller's most recent job description dated August, 1978 and a daily work schedule, both of which had been given to Keller on April 25, 1979. Curran reminded Keller that the job description, which included a provision for "related duties as assigned," adequately described his position.

A few days later, on April 18, 1980, Keller reiterated his written request for a copy of the 1972 job description. Keller indicated that a carbon copy of the request was being sent to a private attorney. On April 23, 1980, Curran did send Keller a copy of a job description dated April, 1972. However, five days later, on April 28, 1980, Keller advised Curran by letter that the April, 1972 job description was not "official" and demanded an "original official Thomas Jefferson University Position Description (Form BBB–1)." Keller also advised Curran that this was the "third and final request through these channels." Again, Keller indicated that a copy of the letter was being sent to an attorney.

On May 1, 1980, Keller sent another memorandum to Curran. He requested a private meeting to discuss Curran's angry conduct during their meeting on April 11. According to plaintiff, he had made at least five verbal requests for such a meeting, all of which Curran declined. In the memorandum, Keller stated that unless Curran agreed to meet with him, it would be necessary to address the matter in an open letter to the president of the university.

On the following day, May 2, 1980, Keller informed his superior, Fred Wagner, Assist-

ant Custodial Services Director, that he would not continue to take training pictures "next year" unless his job description was changed to include that task specifically. Although he had performed that task for the previous eight years, plaintiff told Wagner that he had volunteered to do it before but was now "unvoluntering." He also told Wagner that he had better make other arrangements for next year. Five days later, May 7, 1980, Keller was fired.

Plaintiff alleges that the incidents in question were contrived to create an untenable work situation in order to force his resignation. He asserts that he had an impeccable work record, his termination was not "for cause," and his discharge violated TJU personnel policies. He questions defendants' agents' credibility in view of an official TJU termination document of May 7, 1980, showing that Keller "voluntarily terminated." He also claims TJU lacks credibility because it did not oppose his application for unemployment compensation. On the other side, defendants allege that plaintiff's discharge was made necessary by his "rude and insubordinate" behavior. According to them, Keller's behavior during the critical period from March 20, 1980 to May 7, 1980 destroyed communication between Keller and Curran, and led to Curran's lack of confidence in Keller's ability to function as a member of his management team. In support of this allegation, defendants cite Keller's: (1) failure to observe the one-half hour lunch set forth in the work schedule first distributed to him on April 25, 1979; (2) refusal to accept new training procedures; (3) "obsessive" persistence in seeking an outdated job description; (4) refusal to continue an assigned duty (taking training pictures); (5) "sarcastic and inappropriate" letters to his superior; and (6) threats to take his disputes with Curran directly to the university president or to an attorney without following established internal grievance procedures.

## II. DISCUSSION

In deciding TJU's motion for summary judgment, the court must resolve any doubts as to the existence of genuine issues of fact against the moving party and must view all reasonable inferences in the light most favorable to the party opposing the motion. *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir. 1981); *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Although the Third Circuit has emphasized that summary judgment is considered a drastic remedy, *Hollinger* at 405, courts must grant the motion where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if its determination can affect the outcome of the case. *Burke v. Leader Dogs for the Blind,* 516 F.Supp. 1374, 1375 (E.D.Pa.1981); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975).

The defendants' burden in seeking summary judgment must be considered in light of the intermediate and ultimate burdens of proof provided for under the ADEA. The Act bars employers from discharging or otherwise discriminating against any individual, age forty to seventy, because of his age, but provides that it is not unlawful to discharge or otherwise discipline an individual for good cause. 29 U.S.C. §§ 623(a)(1), 623(f)(3). Because of the similarity in language and purpose between the ADEA and Title VII, Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* employees alleging age discrimination generally have been held to the same requirements for burden and allocation of proof as those alleging race or sex discrimination. *See Massarsky v. General Motors Corp.,* 706 F.2d 111, 117–18 (3d Cir. 1983); (Title VII guidelines applicable to cases arising under ADEA); *Smithers v. Bailar,* 629 F.2d 892, 894 (3d Cir.1980); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1015 (1st Cir.1979) quoting *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978) (prohibitions of ADEA derived directly from the language of Title VII); *Miller v. General Elec. Co.,* 562 F.Supp. 610,

617 (E.D.Pa.1983). *Compare EEOC v. Zippo Manufacturing Company,* 713 F.2d 32 at 38 (3d Cir.1983) (ADEA's scope for purposes of procedure and remedies determined by Fair Labor Standards Act). Therefore, while an employee alleging age discrimination retains the ultimate burden of proving that age was a determinative factor in the employer's decision, the United States Supreme Court has established intermediate evidentiary burdens which serve to bring the litigants and the court expeditiously and fairly to the ultimate question. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

■ A plaintiff must carry the initial burden to establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Massarsky v. General Motors Corp.,* 706 F.2d at 118. The purpose of the *prima facie* requirement is to eliminate the most common non-discriminatory reasons for the employer's action thereby creating a presumption that the employer unlawfully discriminated against the employee. *See Burdine,* 450 U.S. at 253–54, 101 S.Ct. at 1093–94. As adapted to age discrimination actions, some courts have required the plaintiff to show that: (1) he was within the protected class; (2) he was qualified for the job; (3) he satisfied the normal requirements of the job; (4) he was the object of adverse action. *McClain v. Mack Trucks, Inc.,* 532 F.Supp. 486, 489 (E.D.Pa.1982); *Whack v. Peabody & Wind Engineering Co.,* 452 F.Supp. 1369, 1371 (E.D.Pa.1978), *aff'd* 595 F.2d 190 (3d Cir. 1979); *see also Loeb v. Textron,* 600 F.2d 1003, 1013 (1st Cir.1979) (discharged employee also required to show that employer sought similarly qualified replacement following employee's termination).

It is agreed that plaintiff was a member of the protected class, was qualified for the job and was the object of adverse action. However, defendants allege that at the time of his discharge plaintiff was not satisfying the normal job requirements because of his "rude and insubordinate" behavior.

Defendants further allege that plaintiff's own statements, attributing his discharge to causes other than age, destroy any inference of unlawful discrimination such that he cannot make out his *prima facie* case.

■ While defendants' position is persuasive inasmuch as it is largely based on admitted acts of insubordination by Keller, I shall assume without deciding that plaintiff has met his *prima facie* burden. Therefore, defendants must show some "legitimate, non-discriminatory" reason for the termination decision. *Massarsky v. General Motors Corp.,* 706 F.2d at 118, quoting *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824; *Smithers,* 629 F.2d at 895; *McClain,* 532 F.Supp. at 488. The test for this intermediate burden of production is whether the employer sets forth admissible evidence permitting the trier of fact rationally to conclude that the employment decision was not motivated by discrimination. *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1095. TJU need not prove that it was actually motivated by the proffered reasons; it is sufficient to raise a genuine issue of material fact whether TJU discriminated against the plaintiff. *See Burdine* at 254–55, 101 S.Ct. at 1094–95; *Massarsky* at 118.

Judged by this standard, I find that defendants have met their burden of production. Defendants have presented clear, legitimate, non-discriminatory reasons for the decision to discharge Keller, including abuse of working time, criticism of his superior and outright insubordination. Keller admits to the acts which comprise the foundation for defendants' discharge rationale. Specifically, he admits: refusing to perform an assigned duty (taking photographs); exceeding the ½ hour allotted time for lunch; opposing certain changes in the training program made by his superior, Curran, and threatening to take his grievances with Curran directly to the university president instead of following the established TJU grievance procedure. Thus, plaintiff's admissions, in combination with defendants' proffered reasons, destroy the inference of discrimination arising from Keller's initial evidence.

In order to avoid summary judgment, plaintiff must adduce facts raising a genuine issue for trial whether defendants' proffered reasons for his dismissal were pretexts for age discrimination. *See McClain* at 489. Plaintiff's intermediate burden to prove pretext merges with his ultimate burden to persuade the court that "but for" the employer's unlawful discrimination, he would not have been discharged. *See Burdine* at 256, 101 S.Ct. at 1095; *Loeb,* 600 F.2d at 1019. He must only introduce sufficient evidence to create a genuine factual issue concerning the existence of a legitimate justification for the action. *Massarsky,* 706 F.2d at 118. Plaintiff may carry this burden *directly* by adducing evidence such as age-biased statements by his superiors which might persuade the court that a discriminatory purpose more than likely motivated his employer. *See United States Postal Service Bd. of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403, quoting *Burdine* 450 U.S. at 256, 101 S.Ct. at 1095. He may carry this burden *indirectly* by showing that the employer's proffered explanation for his dismissal should not be believed. *Burdine* at 256, 101 S.Ct. at 1095. In considering whether plaintiff has met this burden, the court is mindful that plaintiff brings this action *pro se.* Accordingly, the court has been careful to consider all relevant arguments contained in plaintiff's complaint and answer to defendants' motion. *See United States v. Cappucci,* 342 F.Supp. 790, 792 (E.D.Pa.1972); *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (*pro se* complaint held to less stringent standard).

Plaintiff has produced no direct evidence supporting his claim. He has not shown or purported to show any pattern of age discrimination by his employer. There are no letters or verbal statements by TJU or its agents supporting the allegation of age discrimination. Although Keller accuses Curran of making "prejudiced and biased" statements about him and others, he does not describe these statements or otherwise offer factual support for this assertion. Keller's claim that former Assistant Custodial Services Director Ronald Havener was told by Curran to "build a case" on him is similarly totally lacking factual support. These allegations constitute mere speculation, which is insufficient to defeat a Rule 56 motion.. *McClain* at 490.

Keller seeks to prove age discrimination indirectly, by demonstrating that defendants' proffered reasons for his dismissal are unworthy of belief. Since defendants' allegation of "rude and insubordinate" behavior is premised on the events from March 20, 1980 to May 7, 1980, Keller must adduce facts which challenge the basis of defendants' discharge rationale as asserted. Having given full and careful consideration to his arguments, I find that plaintiff has failed to meet this burden. His arguments are either irrelevant, unsupported by fact or explanation, or plainly contradicted by undisputed record evidence.

Although plaintiff explains *why* he behaved as he did, he does not challenge the validity of defendants' proffered reasons for his discharge. Keller explains that he repeatedly sought a 1972 job description only because he believed the document had become important to Curran. However, this explanation does not undermine defendants' assertion that these repeated requests were a form of harassment and therefore a reasonable factor in the discharge decision. Plaintiff's claim that he did not file a grievance through normal channels because it would be a "waste of time," does not challenge defendants' assertion that Keller's failure to do so, and his threat to take his complaints directly to the University president, were non-discriminatory factors in the decision to fire him. Similarly, Keller's denial of the inference of sarcasm and criticism in his April 9, 1980 memorandum to Curran is irrelevant since plaintiff's own deposition statements establish that the memorandum did cause Curran to react angrily to what Curran regarded as a personal attack. Keller's lengthy attack upon the character and competence of his superior, Curran is not material under the ADEA, even if accurate; the Act does not bar supervisory incompetence or bad char-

acter but proscribes discrimination based upon age. *Cf. Nash v. Jacqueline Cochran, Inc.,* 548 F.Supp. 676, 681 (S.D.N.Y.1982) (ADEA does not authorize business judgment review).

Other assertions by plaintiff are unsupported by fact or explanation. Keller's claim of an "impeccable" work record fails since the factual support for the claim (consisting of written employee appraisals and favorable comments by former assistant custodial services directors) extends only through 1978. This is almost two years before the sequence of events beginning March 20, 1980, on which defendants primarily rely as the basis for their termination decision. Plaintiff's further contention that he was discharged without warning is not disputed by defendants. However, given the defendants' reasons for discharge, that fact alone does not support his claim of age discrimination.

Some assertions by Keller are either plainly contradicted by the record evidence or contrary to accepted principles of law. Plaintiff's assertion that Curran never told him there were any problems with him or the training program is contradicted by Keller's deposition statements and by Curran's letter to plaintiff of April 15, 1980.[1] Nor can Keller be heard to allege that he was not a management level employee merely because he was denied privileges reserved to TJU department heads. Plaintiff's title, job description and position on the organization chart show that he was a management employee. Keller's allegation that defendants' prior offer to "settle" the case constitutes evidence of wrongdoing reflects a misunderstanding of the law. An offer to settle is not admissible in determining liability. Fed.R.Civ.P. 68.

Keller's attempt to undermine defendants' credibility by pointing to an official TJU termination document is not persuasive. *See* Plaintiff's Brief, Exhibit 25. Although the document does erroneously indicate that plaintiff voluntarily terminated, defendants' explanation that the document was prepared in anticipation that Keller might choose the option to resign instead of being fired does not create a material factual dispute. Keller's related attempt to question defendants' credibility in view of their failure to oppose his application for unemployment compensation also fails. Moreover, these actions militate in favor of employer generosity as opposed to employer antagonism or discrimination.

Keller admits to acts of insubordination. He admits that he continued to take one hour for lunch even after receiving a work schedule from Curran in April, 1979 which allowed only ½ hour for lunch. His letters to Curran of April 9th, 18th and 23rd, 1980, offer further proof of insubordination. These letters document Keller's insistent requests for an outdated job description even though he had been given one a year earlier and had been informed that he had all the job information he needed.

The fatal act of insubordination occurred on May 2, 1980 when Keller advised Assistant Custodial Services Director Wagner that he would not continue to photograph employees in training. Plaintiff's contentions that he should not be required to perform this task because it was not specifically included in his job description and he had volunteered to do it initially, are not relevant. He had been directed to perform a task and, if dissatisfied, had the right to invoke the grievance procedure instead of refusing the assignment altogether. Having failed to do so, he may not be heard to

---

1. Curran expressed his displeasure with Keller both in person and in writing. Keller's own account of the March 20, 1980 meeting between Keller, Curran and Wagner reveals that Curran was unhappy with Keller's comments opposing Curran's changes in the training program. (Dep. of plaintiff, May 17, 1982. *See* Defendants' Brief, Appendix 2, Tab E at 26). Keller's account of the April 11, 1980 meeting between Keller and Curran reveals that Curran was "very upset" and that he directly accused Keller of behavior "bordering on insubordination." (*See* Defendants' Brief, Appendix 2, Tab F at 38, 45). Finally, Curran's letter of April 15, 1980 to Keller refers to Keller's "inappropriate and inaccurate comments" and threatens Keller with disciplinary action if he continued to work less than the required eight (8) hours per day. (*See* Defendants' Brief, Appendix 5).

allege that his employer had no right to fire him. Nor may plaintiff, in light of these admissions, be heard to allege that his dismissal was without cause.

### III. CONCLUSION

Although plaintiff has had more than a fair opportunity for full discovery, he has not adduced sufficient evidence to show that there is a genuine issue of material fact that "but for" his age, he would not have been discharged. While plaintiff is "entitled to every favorable inference," he is not entitled to build a case on the "gossamer threads of whimsey, speculation and conjecture." *Hahn,* 523 F.2d at 467, quoting *Manganaro v. Delaval Separator Co.,* 309 F.2d 389, 393 (1st Cir.1962).

An appropriate order follows.

### ORDER

AND NOW, this 12th day of September, 1983, for reasons stated in the attached memorandum, it is hereby ORDERED that:

1. Defendants' motion for summary judgment is GRANTED.

2. Defendants' motion to compel answers to interrogatories filed October 22, 1982, is DENIED as MOOT.