Andrew DOBY, Jr., Plaintiff,

v.

**JONES & LAUGHLIN STEEL INCORPORATED, Defendant.**

Civ. A. No. 84–1121.

United States District Court,
W.D. Pennsylvania,
Civil Division.

Dec. 16, 1985.

Wendell Freeland, Craig A. McClean, Pittsburgh, Pa., for plaintiff.

John C. Unkovic, John B. Bechtol, Pittsburgh, Pa., for defendant.

## MEMORANDUM AND ORDER

SIMMONS, District Judge.

Andrew Doby, Jr., a former employee of Defendant, Jones & Laughlin Steel Incorporated's, ("J & L"), Aliquippa Works in Aliquippa Pennsylvania, alleges that he was discharged in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Defendant now moves for Summary Judgment asserting that Plaintiff has failed to, and cannot, adduce evidence sufficient either to establish a *prima facie* case of age discrimination or to rebut Defendant's proffered legitimate reasons for his termination. Both parties have submitted extensive evidentiary materials, including depositions and affidavits of parties and witnesses, which present all facts provable at trial.

### I. *The Facts*

The undisputed facts of record may be summarized as follows: Plaintiff worked at J & L's Aliquippa Works and held a non-union salaried job. He worked in the Island department as a turn foreman and supervised union represented production and maintenance employees who were engaged both in handling scrap which was used in the steelmaking process and in loading finished steel for shipment (Ahlborn Affidavit, ¶ 9).

Between 1946 and 1970, J & L employed no fewer than 12,000 employees at its Aliquippa Works which was, until recently, an integrated steel making facility (Alhborn Affidavit, ¶ 2). But, through the 1970's, the level of operations at the Aliquippa Works gradually declined (Ahlborn Affidavit, ¶ 2). The spate of imports, shifting markets and erratic market demand made the Aliquippa Works increasingly uncompetitive and subject to sharp swings in operating levels (Ahlborn Affidavit, ¶ 2). Between 1970 and 1981 the competitive position of the Aliquippa Works weakened as the domestic steel market shrank (Ahlborn Affidavit, ¶ 2).

In 1982, business conditions reduced operating levels at the Aliquippa Works to their lowest levels since the Great Depression. J & L was thus forced to respond to the depressed condition of the industry and the particularly severe problems facing the Aliquippa Works.

In 1982, J & L took many actions to save the Aliquippa Works. Relevant to this case, J & L evaluated whether the manning levels in all areas of the plant were in balance with the operating levels at which the plant might reasonably be expected to operate in the future. In early 1982, J & L believed that while the severely depressed operating levels at the Aliquippa Works were not permanent, the plant would not return to mid-1981 operating levels in the foreseeable future (Ahlborn Affidavit ¶ 4–5). Accordingly, J & L implemented a reduction in force among its hourly and salaried work force.

In April, May and June, J & L placed approximately 72 salaried employees on "layoff-recall unlikely" (Ahlborn Affidavit, ¶ 5). Defendant maintains that all layoff decisions, at that time and later, were based on job performance and skills, and care was taken to insure that the layoff decisions were not discriminatorily based (Ahlborn Affidavit, ¶ 7). In May of 1982, Plaintiff was laid off from the Island de-

partment and was placed on "layoff-recall unlikely" (Ahlborn Affidavit, ¶ 13).

The Aliquippa Works layoffs were extremely large in both the hourly and salaried work forces. In July, 1981, 6,772 hourly paid employees were actively at work in the plant and only 264 were on layoff. By October, 1982, only 2,464 hourly employees were scheduled to work, while 4,458 were laid off. (Ahlborn Affidavit, ¶ 8)

The reduction in force among salaried employees was also quite large. As of April 1, 1982, before the layoff at issue in this lawsuit, a total of 936 salaried employees, excluding superintendant level jobs, were permanently assigned to the 18 Aliquippa operating departments. By the end of 1982, 254 salaried employees had been placed on "layoff-recall unlikely" status. In 1983, 54 additional salaried employees were placed on "layoff-recall unlikely" status. (Ahlborn Affidavit, ¶ 8).

In sum, Plaintiff is but one of the more than 300 salaried employees J & L was forced to lay off in 1982 and 1983. He was placed on layoff in a reduction-in-force which resulted in an absolute reduction in the number of hourly and salaried employees working in their respective departments.

With respect to Plaintiff's individual situation, immediately prior to the reduction in the salaried work force which began in the Spring of 1982, there were eight (8) turn foremen working in the Island department (Ahlborn Affidavit ¶ 10). In April of 1982, the Island Department Manager was requested to rank his turn foremen according to work performance, and he *ranked Plaintiff as one of the foremen least necessary for the continued operation of the department* (Ahlborn Affidavit ¶ 11). Consequently, when J & L found it necessary to lay off Island Department employees, Plaintiff was laid off on May 13, 1982 (Ahlborn Affidavit, ¶ 13). By October of 1982, there were only two (2) turn foremen, ages 50 and 54, remaining of the eight (8) who had been working in the Island Department

prior to the beginning of the layoff (Ahlborn Affidavit ¶ 15).

Immediately prior to his layoff, Plaintiff had been temporarily transferred to the Aliquippa Works billet conditioning operation as a turn foreman because there was a temporary need for his services in the billet conditioning operation and the Island department could spare him because of a lack of work (Ahlborn Affidavit, ¶ 12). When the decision was made to reduce permanently the work force in the Island Department, Plaintiff was called back to the Island Department and, on May 13, 1982, was laid off and placed upon the "recall unlikely" list (Ahlborn Affidavit, ¶ 13).

Based only upon allegations that two "trainees" came into the billet conditioning operations as turn foremen the week after Plaintiff was laid off (Doby Deposition of 6/8/84 at 39), Plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 9, 1982 (Doby Deposition of 6/8/84 at 27). His EEOC charge, however, was dismissed (Doby Deposition of 6/8/84 at 33). Plaintiff subsequently brought the present action.

## II. *Discussion*

In deciding J & L's Motion for Summary Judgment, the Court must resolve any doubts as to the existence of genuine issues of fact against the moving party and must view all reasonable inferences in the light most favorable to the party opposing the motion. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir. 1981); *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *Cert. Denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Although the Third Circuit has emphasized that summary judgment is a drastic remedy, *see Hollinger*, 667 F.2d at 405, courts must grant the motion where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The establishment of

*prima facie* case of age discrimination does not necessarily defeat a motion for summary judgment. *Graham v. F.B. Leopold Company, Inc.*, 602 F.Supp. 1423 (W.D.Pa.1985): *Pierce v. New Process Co.*, 580 F.Supp. 1543 (W.D.Pa.), *Aff'd Mem.*, 749 F.2d 27 (3d Cir.1984); *Keller v. Bluemle*, 571 F.Supp. 364 (E.D.Pa.1983), *Aff'd without opinion*, 735 F.2d 1349 (3d Cir.1984); *Fick v. Canterbury Coal Co.*, 568 F.Supp. 927 (W.D.Pa.1983).

The Defendant's burden in seeking summary judgment must be considered in light of the intermediate and ultimate burdens of proof provided for under the ADEA. The Act bars employers from discharging or otherwise discriminating against any individual, age forty to seventy, because of his age, but provides that is is not unlawful to discharge or otherwise discipline an individual for good cause. 29 U.S.C. §§ 623(a)(1), 623(f)(3).

Because of the similarity in language and purpose between the ADEA and Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, employees (or former employees, as in the present action) alleging age discrimination are generally held to the same requirements for burden and allocation of proof as those alleging race or sex discrimination. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Massarsky v. General Motors Corp.*, 706 F.2d 111 (3d Cir.1983); *Smithers v. Bailar*, 629 F.2d 892 (3d Cir.1980). Therefore, in accordance with *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the order of proof in this ADEA case requires that Plaintiff establish a *prima facie* case of age discrimination by proving that: 1.) he is within the protected age group of 40–70 years; 2.) he was subject to adverse employment action; 3.) he was qualified for the positions in question; and 4.) younger employees were treated more favorably. Proof of these facts raises a rebuttable presumption of discrimination which Defendant may counter by presenting a legitimate, non-discriminatory reason for the employment action. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

In the present case, it is undisputed that Plaintiff, age 40, was a member of the protected class and was the object of adverse action. Plaintiff's position, at layoff,[1] was temporarily filled by two younger employees. Further while there is some dispute about Plaintiff's qualifications for the position at issue, for purposes of this motion this Court concludes that Plaintiff has sufficiently met his burden of showing that he was qualified, thereby establishing a *prima facie* case.

Defendant must therefore show some "legitimate, non-discriminatory" reason for the layoff decision. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Massarsky v. General Motors Corp.*, 706 F.2d at 118. The test for this intermediate burden of production is whether the employer sets forth admissible evidence permitting the trier of fact rationally to conclude that the employment decision was not motivated by discrimination. *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1095. J & L's burden is light and the evidence need only raise a factual issue on the motivation for the Plaintiff's lay off. *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094–95. *See also Massarsky*, 706 F.2d at 118.

■ This Court finds that the Defendant employer has met its burden of production. J & L has presented clear, legitimate, non-discriminatory reasons for the layoff of Plaintiff. It is undisputed that the reduction in force at J & L's Aliquippa Works was quite large. As of April 1, 1982, before Plaintiff's layoff, a total of 936 salaried employees, excluding superintendant level jobs, were permanently assigned to the 18 Aliquippa operating departments. By the end of 1982, 254 salaried employees had been placed on "layoff-recall unlikely" status. In 1983, 54 additional salaried em-

---

**1.** With respect to Plaintiff's permanent J & L position, no younger employees remained in the department after the layoffs. Plaintiff alleges he was replaced by younger employees, in an entirely different department in which he was temporarily assigned.

ployees were placed on "layoff-recall unlikely" status (Ahlborn Affidavit, ¶ 8).

In sum, Plaintiff is but one of more than 300 salaried employees J & L was forced to lay off in 1982 and 1983. He was placed on layoff in a reduction-in-force which resulted in an absolute reduction in the number of hourly and salaried employees working in their respective departments.

Defendant has unequivocally rebutted the presumption of discrimination, and Plaintiff *must* show that Defendant's reason for the layoff is a pretext, or that evidence exists proving Defendant's discriminatory intent. *Graham v. F.B. Leopold Co., Inc.*, 602 F.Supp. at 1425; *McClain v. Mack Trucks, Inc.* 532 F.Supp. 486, 489 (E.D.Pa.1982). *See also Nicholson v. Western Electric Co.*, 555 F.Supp. 3, 8 (M.D.N.C.1982), *Aff'd without op.*, 701 F.2d 167 (4th Cir.1983). ("The defendant has met it's burden of articulation. In order for the Plaintiff to survive a motion for summary judgment, he must produce some evidence which would support his claim that Defendant's stated reasons are pretexts and *that the actual intent of the Defendant is to discriminate against him because of his age, race or sex*") (emphasis in original).

Plaintiff's intermediate burden to prove pretext merges with his ultimate burden to persuade the court that "but for" the employer's unlawful discrimination, he would not have been discharged. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *Keller v. Bluemle*, 571 F.Supp. at 369.

Plaintiff must only introduce sufficient evidence to create a genuine factual issue concerning the existence of a legitimate justification for the action. *Massarsky*, 706 F.2d at 118. In *Keller v. Bluemle*, 571 F.Supp at 369, the court delineated the process by which a plaintiff shows pretext:

In order to avoid summary judgment, plaintiff must adduce facts raising a genuine issue for trial whether defendants proffered reasons for his dismissal were pretexts for age discrimination.... Plaintiff may carry this burden directly by adducing evidence such as age-biased statements by his superiors which might persuade the court that a discriminatory purpose more than likely motivated his employer. *See United States Postal Service Bd. of Governors v. Aikens* [460] U.S. [711], 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403, quoting *Burdine* 450 U.S. at 256, 101 S.Ct. at 1095. He may carry this burden indirectly by showing that the employer's proffered explanation for his dismissal should not be believed. *Burdine* at 256, 101 S.Ct. at 1095.

■ Plaintiff has presented no such direct or circumstantial evidence, nor any other evidence which challenges in anyway J & L's evidence. Rather, Plaintiff has alleged *only* that two younger employees worked temporarily in the billet conditioning operation after his layoff and J & L agrees that this is true. This fact, standing alone, is insufficient to establish Plaintiff's claim. In *Nash v. Jacqueline Cochran, Inc.*, 548 F.Supp. 676 (S.D.N.Y.1983), a case quite similar to the present action, plaintiff challenged the decision to terminate him as opposed to another employee who had less service and was not in the protected age group. In granting summary judgment on behalf of the employer, the court noted in language which squarely meets the contentions of the Plaintiff in this case:

All that plaintiff has established is that he was within the protected age group, whereas Ms. Hudson is not. This is insufficient to establish his claim. To allow this case to go to the jury would permit a determination [sic] be made on the basis of guess or speculation. Indeed, were a jury to return a verdict in favor of plaintiff, the Court would be constrained to grant judgment n.o.v.

548 F.Supp. at 681 (footnotes omitted). *Accord, LaMontagne v. American Convenience Products, Inc.*, 36 FEP cases 913,-920 (7th Cir.1984); *Pace v. Southern Railway System*, 701 F.2d 1383, 1390 (11th Cir.) *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983); *Marshall v. Hills Bros.*, 432 F.Supp. 1320,1325 (N.D.Cal. 1977)

Further, the record demonstrates that one of the two younger employees, trainee Minsinger, worked in the billet conditioning operation for seventeen weeks *as a mechanical engineer and that he worked on projects which required skills that Plaintiff did not possess.* (Johnson Deposition at 16, 17, 28–29, 37–38). Mr. Minsinger did not work as a turn foreman in the billet conditioning operation, the job at which Plaintiff had worked temporarily (Johnson Deposition at 18, 46).

The other employee, turn foreman Brennan worked in the electric furnace department at J & L's Pittsburgh Works and, as such, he possessed skills that J & L needed to retain. Thus, as J & L's electric furnace at its Pittsburgh Works was idled for varying periods of time, supervisory employees such as Mr. Brennan were given other temporary assignments so that they would be available to return to the Pittsburgh Works for the renewed operation of the electric furnace. It was for this reason only that Mr. Brennan was assigned temporarily to the Aliquippa Works billet conditioning operation for various periods in 1982 and 1983 (Ahlborn Affidavit, ¶ 18).

Thus, not only has J & L demonstrated its legitimate, non-discriminatory reasons for Plaintiff's layoff, it has also articulated reasons for the temporary assignments of both Messrs. Minsinger and Brennan to the billet conditioning operation.

It is further clear and undisputed that Plaintiff's permanent job in May of 1982 was that of turn foreman in the Island department (Doby Deposition of 6/8/84 at 29–30; Ahlborn Affidavit, ¶ 9). It is also undisputed that of the eight (8) turn foremen in the Island department, layoffs reduced that force to two (2), one of the turn foremen remaining being age 50 and the other age 54 (Ahlborn Affidavit ¶ 15). Thus, it is clear that with respect to Plaintiff's permanent J & L job, no younger employee remained in the Island department after the layoffs were completed and no evidence of any kind exists from which the trier of fact could reasonably conclude that Plaintiff was laid off from the Island department because he was 40 years old.

This Court therefore holds, as a matter of law, that Plaintiff has failed to show either that Defendant's legitimate nondiscriminatory reason was a pretext, or that Defendant had a discriminatory intent in laying off the Plaintiff. Plaintiff "may not rest on the allegations of his pleadings or upon bare assertions, conclusory allegations, suspicions or doubts, but must, by affidavit or otherwise set forth *specific facts* showing that there is a genuine issue for trial." *Graham v. F.B. Leopold Co., Inc.,* 602 F.Supp. at 1426 (emphasis in original), quoting *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981). *See also Nash v. Jacqueline Cochran, Inc.,* 548 F.Supp at 680. "[T]here must be some basic evidentiary fact to permit the trier of fact to draw a reasonable inference of intent to discriminate". Id.

### III. *Conclusion*

Although Plaintiff has had more than a fair opportunity for full discovery, he has not adduced any evidence to show that there is a genuine issue of material fact that "but for" his age, he would not have been laid off. While Plaintiff is "entitled to every favorable inference," he is not entitled to build a case on the "gossamer threads of whimsey, speculation and conjecture." *Keller v. Bluemle,* 571, F.Supp. at 371, quoting *Manganaro v. Delaval Separator Co.,* 309 F.2d 389, 393 (1st Cir. 1962). Accordingly, Defendant's Motion for Summary Judgment will be granted.

An appropriate Order will be issued.