Roland GEIB

v.

ALAN WOOD STEEL COMPANY et al.

Civ. A. No. 74–2079.

United States District Court,
E. D. Pennsylvania.

Sept. 17, 1976.

Steven A. Rubin, Philadelphia, Pa., for plaintiff.

Richard L. Goerwitz, Jr., Swartz, Campbell & Detweiler, Philadelphia, Pa., for defendants.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

This is a diversity action brought by a former president of the Upper Merion & Plymouth Railroad (UMP) for breach of an employment contract (first count), for malicious interference with his employment contract by Alan Wood Steel Company (AWSC) and Harleston Wood (second count), for a turn-over order for shares of stock in UMP (third count) and for defamation (fourth count). Presently before the court is the motion of the defendants for summary judgment. After oral argument and upon consideration of the pleadings, briefs, depositions and answers to interrogatories, I have concluded that the defendants' motion must be granted as to all counts.[1]

UMP was a terminal switching railroad and a wholly owned subsidiary of AWSC, which was also UMP's primary customer. Many of the corporate activities of both companies, such as purchasing and personnel, were coordinated through a single department at AWSC. The defendant, Harleston Wood, is the President and Chairman of the Board of AWSC. John Hannigan is the Vice-President of AWSC and the person with whom the plaintiff dealt in the discussions leading to his employment as President of UMP.

In the first count of the complaint, plaintiff alleges that on or about January 1, 1970, he entered into an oral employment contract with UMP "for a number of years to be president . . . so long as [he] operated the railroad successfully, profita-

bly and efficiently. . . ."[2] He then avers that on or about September 8, 1972, "he was fired from or caused to leave his position [by UMP] in violation of the terms and conditions of the contract." Plaintiff claims damages for his loss of salary, bonuses and other employee benefits.

UMP contends it is entitled to judgment for several reasons. First of all, UMP argues that the plaintiff was hired by its Board of Directors and not by Hannigan who, according to the plaintiff, made the representations that plaintiff would continue as president of UMP "so long as [he] operated the railroad successfully, profitably and efficiently."

Secondly, UMP urges that even assuming that Hannigan had the authority to negotiate the contract on behalf of UMP, the contract was terminable at will by either party, and, accordingly, no breach occurred as a result of plaintiff's termination.

Finally, defendant points to the undisputed evidence that plaintiff resigned from the position and contends that the payment of severance pay was sufficient consideration for the resignation.

Because I conclude that the contract was terminable at will, I will assume, for the purposes of this motion, that Hannigan had the authority to act as agent for UMP. In addition, it will not be necessary to reach the resignation issue.[3]

As recently as 1974, the Supreme Court of Pennsylvania had occasion to reaffirm the long-established principle that in the absence of a statutory or contractual provision to the contrary, either party may "terminate an employment relationship for any or no reason". *Geary v. United States Steel Corporation*, 456 Pa. 171, 175, 319 A.2d 174, 176 (1974). Plaintiff argues that this principle is inapplicable here since the contract provided he would remain as president so long as the business was operated

---

1. At oral argument, plaintiff's counsel conceded that no evidence would be offered in support of counts three and four, and, therefore the court will address only counts one and two.

2. Complaint, ¶ 2.

3. Plaintiff admits submitting a letter of resignation, but contends it was coerced.

efficiently and profitably.[4] Defendant, on the other hand, contends that such terms are too indefinite and, therefore, unenforceable.

■■■■ The general rule in Pennsylvania is that a contract for personal services which does not specify a definite period of time for its duration is presumed to be terminable at will. *Seneca Falls Machine Co. v. McBeth*, 368 F.2d 915 (3d Cir. 1966); *Mayerson v. Washington Manufacturing Co.*, 58 F.R.D. 377 (E.D.Pa.1972); *Utility Appliance Corp. v. Kuhns*, 393 Pa. 414, 143 A.2d 35 (1958); *Rosenfeld v. Rosenfeld*, 390 Pa. 39, 133 A.2d 829 (1957); *Cummings v. Kelling Nut Co.*, 368 Pa. 448, 84 A.2d 323 (1951); *Slonaker v. P. G. Publishing Co.*, 338 Pa. 292, 13 A.2d 48 (1940). The burden is on the party asserting the contrary to overcome the presumption by showing facts or circumstances establishing tenure. *Mayerson v. Washington Manufacturing Co., supra; Jackman v. Military Publications, Inc.*, 234 F.Supp. 217 (E.D.Pa.1964), aff'd, 350 F.2d 383 (3d Cir. 1965); *Lubrecht v. Laurel Stripping Co.*, 387 Pa. 393, 127 A.2d 687 (1957). Tenure can be inferred from conditions prescribed in the agreement which determine duration or from evidence that the parties intended the relationship to endure for a reasonable time. *Mayerson v. Washington Manufacturing Co., supra; Cummings v. Kelling Nut Co., supra; Jones v. Pittsburg Mercantile Co.*, 295 Pa. 219, 145 A. 80 (1928). The intention of the parties is the ultimate guide. *Clancy v. Brunswick-Balke-Collender Co.*, 291 F.2d 799, 803 (3d Cir. 1961); *Slonaker v. P. G. Publishing Co., supra* 338 Pa. at 296, 13 A.2d 48.

■■■ The "so long as" language cited by the plaintiff does not provide any specific guidelines for determining the duration of the contract. Similar language has been held to be too ambiguous and, therefore, insufficient to overcome the presumption that the contract was terminable at will. *Mayerson v. Washington Manufacturing*

*Co., supra* ("continuous as long as . . ."); *Red Wing Shoe Co. v. Shepherd Safety Shoe Corp.*, 164 F.2d 415 (7th Cir. 1947) ("so long as sales made on account . . . amount to a yearly average of $35,000"); *Lightcap v. Keaggy*, 128 Pa.Super. 348, 194 A. 347 (1937) ("as long as you live . . .").

Plaintiff attempts to give his contract a temporal dimension by arguing that it was implicit he would hold the position *"until his retirement* subject to his ability to profitably and efficiently operate the railroad". (emphasis added)[5] "Until retirement" is not any more definite than the modifying language which follows it and is clearly not the type of contractual provision or circumstance which would be sufficient to overcome the presumption that the contract is terminable at will.

The plaintiff relies on *Lubrecht v. Laurel Stripping Co., supra*, for the proposition that the duration of an employment contract, in the absence of a specific provision, is a factual matter which must be decided by the jury under all the circumstances. In that case, although the contract did not provide for any definite term, the plaintiff was hired "in the capacity of general manager of all of the mining and stripping operations of the defendant company in respect of all contracts that the company then had or should thereafter acquire from the date of the employment contract whether such mining or stripping contracts were procured by the plaintiff or obtained by the defendant company". 387 Pa. at 394, 127 A.2d at 688. The court held that this language "afforded an inference that the plaintiff's employment would continue so long as one of such contracts was being operated . . . .", 387 Pa. at 397, 127 A.2d at 690, and, therefore, it was proper to submit the issue to the jury.

Here, however, plaintiff is unable to point to a single circumstance in the con-

---

4. At page 79 of his deposition, plaintiff testified "[t]hey said it was my job and mine to run and keep as long as I kept it efficient and profitable".

5. Plaintiff's reply to motion for summary judgment, ¶ 2. *See also* plaintiff's deposition, page 78.

duct of the parties or the language of the employment agreement from which it is reasonable to infer that the parties intended a specific term or a reasonable time. Indeed, the evidence suggests the contrary, for plaintiff concedes that at the time he was negotiating the contract, he was aware that his predecessor resigned because UMP refused to enter into a contract of definite duration.[6]

Accordingly, I conclude that the defendant is entitled to judgment on Count I as a matter of law.

The second count of the complaint which charges AWSC and Harleston Wood with malicious interference with a contractual relationship is grounded upon § 766 of the Restatement of Torts, which provides in pertinent part:

> "[O]ne who, without privilege to do so, induces or otherwise purposely causes a third person not to
>
> (a) perform a contract with another, or
>
> (b) enter into or continue a business relation with another
>
> is liable to the other for the harm caused thereby."

The Courts of Pennsylvania "have held that both employers and employees are entitled to freedom from meddling by third parties, even where the employment is at will. *Dorrington v. Manning*, 135 Pa.Super. 194, 4 A.2d 886 (1939); *Padden v. Local 90 United Ass'n. of Journeymen Plumbers*, 168 Pa.Super. 611, 82 A.2d 327 (1951)." *Geary v. United States Steel Corp.*, 456 Pa. at 177, 319 A.2d at 177.

 It is the plaintiff's contention that he was fired as President of UMP on the orders of Harleston Wood acting on behalf of AWSC. The defendants, on the other hand, argue that because of AWSC's financial interest in UMP, they were privileged to cause UMP not to continue the relationship with the plaintiff.

Section 769 of the Restatement of Torts provides:

> "One who has a financial interest in the business of another is privileged purposely to cause him not to enter into or continue a relation with a third person in that business if the actor
>
> (a) does not employ improper means, and
>
> (b) acts to protect his interest from being prejudiced by the relation."

This privilege is recognized in Pennsylvania. *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971). Indeed, under the law of Pennsylvania, the absence of such a privilege is an element of the cause of action which must be pleaded and proven by the plaintiff. *Capecci v. Liberty Corp.*, 406 Pa. 197, 202, 176 A.2d 664 (1962); *Gresh v. Potter McCune Company*, 235 Pa.Super. 537, 344 A.2d 540 (1975); *Bahleda v. Hankison Corp.,*, 228 Pa.Super. 153, 323 A.2d 121 (1974); *see also Barlow v. Brunswick Corp.*, 311 F.Supp. 209 (E.D.Pa.1970).

 The plaintiff also argues that the privilege under § 769 of the Restatement of Torts is not available to Wood and AWSC by reason of *Comment d*, which provides that the privilege "does not apply to the causing of a breach of contract". It is obvious, however, that the termination of a contract which is terminable at will does not constitute a breach, and, therefore, the terms of *Comment d* are not applicable.

 Accordingly, Wood and AWSC are entitled to judgment on the second count.

 I have also considered the plaintiff's contention that he has a cause of action under the "commodities clause" of the Interstate Commerce Act, 49 U.S.C. § 1(8)[7], and find it to be without merit.

---

6. Plaintiff's deposition page 112.

7. The "commodities clause" of the Interstate Commerce Act, 49 U.S.C. § 1, par. (8) provides: *Transportation of commodity manufactured or produced by railroad forbidden.* It shall be unlawful for any railroad company to transport from any State . . . to any other State . . . or to any foreign country, any article or commodity, other than timber and the manufactured products thereof, manufactured, mined, or produced by it, or under its authority, or which it may own in whole or in part, or in which it may have any interest, direct or indirect, except such articles or commodities as may be necessary and intended for its use in the conduct of its business as a common carrier.

This clause is designed for the benefit of other shippers to prevent a parent company from exercising its control over a railroad subsidiary so as to give itself unfair advantage as a shipper over the other customers of the railroad. *United States v. Elgin, Joliet and Eastern Railway Co.*, 298 U.S. 492, 56 S.Ct. 841, 80 L.Ed. 1300 (1936). I can perceive no connection between the "commodities clause" and the plaintiff's claim for breach of an employment contract. He does not even allege that the "commodities clause" was violated or that he was discharged because he insisted on compliance.

Accordingly an order will be entered granting summary judgment for all defendants on all counts.