**In re HOTSTUF FOODS, INC., Debtor.**

**Bankruptcy No. 88–10384F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 31, 1989.

Edward C. Toole, Jr., Mary F. Walrath, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for the debtor, Hotstuf Foods, Inc.

Lawrence R. Woehrle, Philadelphia, Pa. for Robert Rosner, unsecured creditor.

James J. O'Connell, Philadelphia, Pa., Asst. U.S. Trustee.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

The debtor has brought an objection to a proof of claim filed by Robert Rosner, who claims he is owed the unsecured amount of $9,542.90. The debtor avers that no funds are due and owing on this claim. The evidence presented at a hearing in this matter on January 11, 1989 may be summarized as follows:

### I.

The claimant was an employee of an entity called Edgemont Stone and Supply Company in June, 1987 when he learned through a mutual acquaintance of the debtor's president that Hotstuf Foods, Inc. was seeking to hire a new plant manager. At the suggestion of this mutual acquaintance, attorney Allan Gillis, the claimant telephoned Mr. Neil Glassman, president of Hotstuf, on or about June 5, 1987 to inquire about the job opening.

When the claimant spoke with Mr. Glassman, he was informed of the duties of the plant manager, who is in charge of pur-

---

chasing, inventory, supervising the plant's operation, and insuring compliance with all health and safety codes. Mr. Glassman informed the claimant that the current plant manager, his brother-in-law, was leaving the debtor's employ due to some disagreement between them. The parties discussed salary; the claimant either requested or demanded a salary of $40,000.00 per year. Mr. Glassman said he would have to think it over.

Within a day or two, Mr. Gillis called the claimant and made him the following job offer on behalf of Mr. Glassman: if Rosner would accept the plant manager position, he would be compensated at an annual rate of $30,000.00 for the first thirty days, at the annual rate of $35,000.00 for the following ninety days, and at the annual rate of $40,000.00 for the balance of the year. He was also to receive certain medical insurance. The claimant accepted this job offer on the terms stated by Mr. Gillis and, apparently shortly thereafter, resigned his position with Edgemont Stone.

The claimant began his employment with the debtor the following Monday, June 15, 1987. On the claimant's first day of work, and at Rosner's request, Mr. Glassman memorialized the terms of claimant's employment. This writing, introduced in evidence as Exhibit Claimant A, was handwritten on debtor's stationery and states in its entirety:

6/15/87

Dear Bob,
 This letter confirming our agreement regarding salary over the next year.
1st 30 days= $30,000.00
2nd 90 days= $35,000.00
 after above 30 days
3rd after original 120=$40,000.00 per year plus family Blue–Cross Blue–Shield 250 [unintelligible] C-plan & dental.
 Sincerely yours,
 (signed) Neil Glassman

1. At the hearing on this matter the parties differed on whether Baruch would have any production supervision responsibilities, or whether these would be solely vested in Rosner.

2. Exhibit Claimant B is a letter on Hotstuf Foods, Inc. stationery, dated June 15, 1987 and signed by the debtor's president. The letter, addressed "Dear Supplier," is an introduction of

Mr. Rosner testified that the former plant manager, Mr. Ari Baruch (Glassman's brother-in-law), was at the job site when Rosner reported for work. Mr. Baruch was apparently uncooperative with Rosner, making Rosner's assumption of duties as plant manager difficult. On June 18, 1987, the fourth day of claimant's employ with Hotstuf Foods, the claimant spoke with Mr. Baruch, who stated that he did not intend to leave the plant manager position. Claimant went to Mr. Glassman, who confirmed the fact that Baruch indeed would be staying on as plant manager and that Rosner would no longer be needed in that capacity. Glassman suggested that Rosner stay in the debtor's employ. Testimony showed that Glassman offered to retain Rosner at the agreed-upon salary, but his title would be Plant Supervisor, and he would report to Baruch, the plant manager.[1] This new position, unlike that of Plant Manager, involved no contact with suppliers or purchasers of the debtor's products,[2] required weekend work (the plant manager being entitled to Thursdays and Sundays off) and additional physical labor, and further did not provide an office.

The claimant considered this offer for about a day, and declined the position. Shortly thereafter, on June 25, 1987, the claimant was rehired by his former employer, Edgemont Stone, and returned to his previous position at his prior salary. The claimant testified that he received one week's salary from the debtor.

The claimant's position is that he and the debtor entered into an employment contract for a one year period at the salary described. This contract, he argues, was breached by his termination as Plant Manager, which breach excused claimant from performance and entitled him to damages equal to the difference between the salary he earned that year upon returning to

the debtor's "new purchasing agent Mr. Robert Rosner" who "will begin assuming responsibility for total purchasing of provisions and equipment on the 22nd of June although he will be available beginning immediately to introduce himself to all of our Suppliers so that he might assume his position with a smooth transition period."

Edgemont Stone and the salary he would have earned had he not been terminated as Plant Manager. Thus, Rosner now claims he is owed the unsecured amount of $9,542.90.[3]

The debtor, apparently conceding that an employment contract did exist between the parties, views this contract as one of indefinite term, which, under applicable Pennsylvania law, creates an "at-will" employment relationship, allowing the employer free rein to discharge an employee. As the employer was merely exercising its rights under this contract and paid Rosner in full for services rendered, it argues that Rosner has no cause of action. The debtor argues in the alternative that even if a one year term of employment was created, Rosner neglected his duty to mitigate damages by his refusal of debtor's offer of another position at the Plant Manager's salary, and that this failure to mitigate deprives him of any damage claim.

## II.

The law of Pennsylvania adheres to the well-known and long-standing employment at-will doctrine, which states that, absent statutory or contractual clauses to the contrary (including an "express understanding between employer and employee concerning the duration of their contract," *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 309 (1986)), employees may be discharged at any time, for any reason, or for no reason at all. *O'Neill v. ARA Services, Inc.*, 457 F.Supp. 182, 186 (E.D.Pa.1978); *Geary v. United States Steel Corp.*, 456 Pa. 171, 175, 319 A.2d 174 (1974); *Henry v. Pittsburgh & Lake Erie R.R. Co.*, 139 Pa. 289, 21 A. 157 (1891). Pennsylvania recognizes only a narrow exception to this doctrine, disallowing the discharge of an at-will employee if such discharge violates a clearly recognized public policy. *Geary v. United States Steel Corp.*[4]

This doctrine became the dominant American rule towards the end of the nineteenth century, its rationale based on the assumption that it was necessary to preserve managerial discretion in the work place and to maintain freedom of contract. While this philosophy failed to recognize that no freedom to contract truly exists between parties of greatly disparate bargaining power, *see generally* Fineman, *The Development of the Employment At–Will Rule*, 20 J.Amer.L.Hist. 118 (1976), it held sway in most jurisdictions until the post-World War II era, when courts began to recognize that economic conditions had changed radically since the *laissez-faire* climate of the latter part of the last century. *See* F. Tannenbaum, *A Philosophy of Labor* 9 (1951); Blades, *Employment at Will v. Individual Freedom: On Limiting the Abusive Exercise of Employer Power*, 67 Colum.L.Rev. 1404 (1967).

The rule has been widely criticized in recent years by commentators who argue that it gives employers too much discretion and allows them to take unfair advantage of employees. *See, e.g.,* Decker, *At–Will Employment in Pennsylvania—A Proposal For Its Abolition and Statutory Regulation*, 87 Dickinson L.Rev. 477 (1983); *At–Will Employment and The Problem of Unjust Dismissal*, 36 Rec.A.B. City N.Y. 157 (1981) (quoted in Judge Gibbon's dissent in *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 922–923 (3d Cir.1982)); Note, *Protecting At–Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith*, 93 Harv.L.Rev. 1816 (1980). In response, courts in some states have abrogated the rule by reading into all employment contracts the duty to dismiss an employee only in good faith and for just cause. *See, e.g., Gates v. Life of Montana Ins. Co.*, 196 Mont. 178, 638 P.2d 1063 (1982); *Cleary v.*

---

**3.** The sum originally sought in claimant's proof of claim was $14,542.90; this amount was reduced by claimant's counsel orally at the hearing by the amount of $5,000.00, representing an annual bonus received by Rosner from Edgemont Stone.

**4.** However, even if an important public policy is involved, the employer may discharge an employee-at-will if there exists a separate, plausible and legitimate reason for doing so. *Cisco v. United Parcel Services, Inc.*, 328 Pa.Super. 300, 476 A.2d 1340 (1984).

*American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980).

As noted above, the employment-at-will presumption remains in force at the current time in Pennsylvania with only modest alteration, *see Geary v. United States Steel Corp.*,[5] *Darlington v. General Electric; McCartney v. Meadowview Manor, Inc.*, 353 Pa.Super. 34, 508 A.2d 1254 (1986), as has been recognized by the courts of this circuit. *Beidler v. W.R. Grace, Inc.*, 461 F.Supp. 1013 (E.D.Pa. 1978), *aff'd*, 609 F.2d 500 (3d Cir.1979); *Geib v. Alan Wood Steel Co.*, 419 F.Supp. 1205 (E.D.Pa.1976). However, if an employment contract clearly specifies a definite period of time for its duration, Pennsylvania contract law operates to remove it from the terminable-at-will category. *Seneca Falls Machine Co. v. McBeth*, 368 F.2d 915, 917 (3d Cir.1966); *Geib v. Alan Wood Steel Co.*, 419 F.Supp. at 1208; *Cummings v. Kelling Nut Co.*, 368 Pa. 448, 451, 84 A.2d 323 (1951); *Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 511 A.2d 830, 837 (1986). Thus, an employee hired under a contract for a definite tenure may be terminated not at will, but only for cause. *In re Gross*, 48 B.R. 674, 677–678 (Bankr.E.D.Pa.1985); *Lavin v. Goldwater*, 366 Pa. 599, 79 A.2d 266 (1951). Conversely, in the absence of an agreement for a fixed period of time a hiring is at will and no cause of action will lie for its termination (if no public policy is thereby violated). *Richardson v. Charles Cole Memorial Hosp.*, 320 Pa.Super. 106, 466 A.2d 1084 (1983).

The burden is on the party asserting the contrary of the at-will presumption, in this case, claimant Rosner, to show facts or circumstances establishing tenure, that is, that the employment contract was for a definite period of time. *Geib v. Alan Wood Steel Co.*, 419 F.Supp. at 1208; *May-

*erson v. Washington Mfg. Co.*, 58 F.R.D. 377 (E.D.Pa.1972); *Banas v. Matthews International Corp*, 348 Pa.Super. 464, 502 A.2d 637 (1985); *Lubrecht v. Laurel Stripping Co.*, 387 Pa. 393, 127 A.2d 687 (1957). The evidentiary standard for defeating the at-will presumption is quite high. *Browne v. Maxfield*, 663 F.Supp. 1193 at 1200 (E.D. Pa.1987); *Martin v. Capital Cities Media, Inc.*, 511 A.2d at 837 (while it is true that "an employment contract which is clearly for a term of a specific number of years would be enforceable, any language short of this definiteness is generally strictly reviewed because of the persuasive presumption that the employment is at-will").

The claimant argues that he had a one year employment contract with the debtor, based on the debtor's memorialization of their agreement, Ex. Claimant A. He states that the specific language of this letter, which "confirm[s] our agreement regarding salary over the next year," reflects an employment agreement of at least one years' duration. The testimony did not reveal any negotiations between the debtor and claimant regarding job security or term of employment; indeed, claimant admitted he had received no promise of any particular term of employment, and that he had only a desire to remain in the debtor's employ for a lengthy, indefinite period.

In determining whether an employment contract is for a definite term, it is the intention of the parties which must be the ultimate guide, and "in order to ascertain that intention, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter in agreement." *Gillian v. Consolidated Foods Corp.*, 424 Pa. 407, 414, 227 A.2d 858 (1967), *quoting Slonaker v. P.G. Publishing Co.*, 338 Pa. 292, 296, 13

---

**5.** *See, e.g., Yaindl v. Ingersoll–Rand Co.*, 281 Pa.Super. 560, 422 A.2d 611 (1980) (applying a public policy exception to the employment-at-will rule, allowed by the Supreme Court in *Geary*, and concluding that an employer's specific intent to harm the employee "is an example of where a discharge violates public policy," 281 Pa.Super. at 573 n. 5, 422 A.2d 611); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28,

386 A.2d 119 (1978) (cause of action exists where the employee at will is discharged for performing an obligation of jury service).

While the Court in *Geary* left open the possibility that a cause of action for wrongful discharge may lie where a clear mandate of public policy is violated by the discharging employer, the claimant herein raises no public policy implicated by his dismissal.

A.2d 48 (1946). *See also Lubrecht v. Laurel Stripping Co.; Price v. Confair*, 366 Pa. 538, 79 A.2d 224 (1951). The language of Exhibit Claimant A appears as the only evidence speaking in favor of a finding of a contract of one years' duration. However, it is well established that a contract stating a fixed salary *per annum* does not raise a presumption that there exists a term of employment for one year, *Gillian v. Consolidated Foods Corp.*, 424 Pa. at 413–414, 227 A.2d 858; *Trainer v. Laird*, 320 Pa. 414, 183 A. 40 (1936), and I cannot conclude that the debtor's breakdown of claimant's salary in Ex. Claimant A amounts to more than a statement of annual remuneration. Certainly there is small difference between claimant's requested annual salary of $40,-000.00 and the accepted terms, which would have realized the claimant $37,942.89 at the end of twelve months' employment. I also cannot conclude that by offering an annualized salary in increasingly larger increments, the debtor thereby intended that claimant be hired for one year. On the contrary, it may well be that the debtor, possibly facing economic difficulties at the time of contracting, intended only to negotiate for itself a manageable, favorable pay scale for a period of less than one year.[6]

Typical of the surrounding circumstances in which courts have found evidence of the parties' intent to contract for employment of specific duration is a showing that an employee gave his or her employer additional consideration—that is, that the employee brought to the employer more than the services for which that person was hired. Such a showing may rebut the at-will presumption, and courts will infer that the parties intended to overcome the at-will presumption. *See, e.g., Gillian v. Consolidated Foods Corp.* (employee sold his business to employer and entered into employment contract of indefinite duration, court held these circumstances rebutted a hiring at will); *Huguet v. Foodsales, Inc.*, 19 Pa. D. & C. 3d 376 (1980) (employee's sale of his business to the employer constituted additional consideration sufficient to show that employee entered into employment relationship with bargaining strength greater than that of the usual employee). In the instant case, I find that claimant's decision to quit a job with his former employer in order to assume a position with the debtor is not a sufficient detriment to constitute additional consideration, but rather "was simply a reasoned choice of a new career goal." *Darlington v. General Electric*, 504 A.2d at 315. Similarly, there was no evidence that the claimant discussed the importance of job security with his future (albeit short-lived) employer, *see Browne v. Maxfield*, 663 F.Supp. at 1200; *Smith v. Shallcross*, 165 Pa.Super. 472, 474, 69 A.2d 156 (1949), or that the debtor bargained with him over severance pay, *Browne v. Maxfield*, 663 F.Supp. at 1201.

In short, the claimant failed to point to a single circumstance in the conduct of the parties or the language of their contract from which I can reasonably infer that the parties intended to contract for a specific term. Indeed, as noted above, the evidence suggests the contrary, as the claimant testified that at the time of contract negotiations he was not promised any particular term of employment, and that in fact his own plans were indefinite. I thus conclude that the claimant failed to overcome the employment at-will presumption. I will not, therefore, address the alternate theory presented by the debtor on its behalf.

An appropriate order shall be entered.

---

**6.** In his trial memorandum, claimant relies heavily upon the Pennsylvania Superior Court decision, *Smith v. Shallcross*, 165 Pa.Super. 472, 69 A.2d 156 (1949) which affirmed a lower court determination that a particular employment agreement was for a definite period and not at-will. That decision is inapposite for it was based upon three factors: a guaranteed yearly minimum salary; annual review and adjustment of monthly commission payments; and a statement of the employer's accountant that a starting date for the contract year was negotiated and established which differed from the date the employee began his employment. Taken together, the intention of the parties to enter into a yearly contract was established.

In the instant dispute, though, Exhibit Claimant A only makes reference to the "salary over the next year." As noted above, this statement is ambiguous of the parties intent. Moreover, the testimony offered disclosed no discussion or intention to establish a fixed term of employment, nor was any other evidence offered to support a contract for a fixed term.

### ORDER

AND NOW, this 31 day of January, 1989, upon consideration and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that proof of claim number 19, filed by Robert Rosner, is DISALLOWED.